# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 23-0411V

| | |
|---|---|
| JOANNE COSTELLO, | Chief Special Master Corcoran |
| Petitioner, | Filed: May 23, 2025 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Leigh Finfer*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Alyssa M. Petroff*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On March 24, 2023, Joanne Costello filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving an influenza ("flu") vaccine on September 29, 2020. Petition at 1, ¶ 1, 16.

The parties dispute whether Petitioner suffered any reduction in range of motion ("ROM"). For the reasons discussed below, I find that Petitioner suffered at least a minimal

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

reduction in ROM, and she has satisfied the other requirements of a compensable Table SIRVA injury. Petitioner is thus entitled to compensation under the Vaccine Act.

### I.      Relevant Procedural History

Along with the Petition, Ms. Costello filed the declaration[3] and medical records required under the Vaccine Act. Exhibits 1-7; *see* Section 11(c). On June 8, 2023, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 8.

Approximately six months later, Respondent expressed a willingness to engage in settlement discussions. Status Report, filed Dec. 7, 2023, ECF No. 14. Over the subsequent six months, the parties attempted to reach an informal resolution. *See,* e.g.*,* Status Report, filed Feb. 21, 2024, ECF No. 17. On May 31, 2024, they informed me they had reached an impasse. Joint Status Report, ECF No. 20.

On June 24, 2024, Respondent filed his Rule 4(c) Report opposing compensation in this case. ECF No. 21. Emphasizing the failure of Petitioner's orthopedist to document any abnormal ROM and only one mention of mild internal ROM loss in a physical therapy ("PT") record from more than nine months post-vaccination, Respondent insists Petitioner "has not demonstrated that she suffered 'limited or reduced range of motion following receipt of a covered vaccine.'" *Id.* at 6 (citing *Bolick v. Sec'y of Health & Hum. Servs.,* No. 20-893V, 2023 WL 8187307, at *6 (Fed. Cl. Spec. Mstr. Oct. 19, 2023)).

On January 27, 2025, I ordered Petitioner to identify any medical record evidence that shows she suffered limitations in her ROM. ECF No. 22. In response, she referenced an earlier PT record, from June 2021, showing her right shoulder adduction was only 25 degrees. Status Report, filed Feb. 28, 2025, ECF No. 23. The matter is now ripe for adjudication.

### II.     Finding of Fact Regarding ROM

At issue is whether Petitioner ever suffered a reduction in ROM, which I have determined is an element of a Table SIRVA claim. *See Bolick,* 2023 WL 8187307, at *6 (finding reduced ROM is required under 42 C.F.R. § 100.3(c)(10)).

---

[3] The declaration was signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Ex. 7.

### A.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined.

*Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### B. Analysis

I make the ROM finding after a complete review of the record to include all medical records, affidavits or declarations, and additional evidence filed. Specifically, I base the findings on the following evidence:

- Prior to vaccination, Petitioner suffered common conditions such as high cholesterol and menopause. Ex 2. She experienced episodes involving pelvic pain, a lump in her abdominal area, and temporary numbness from her knee to her foot. *Id.* at 17, 144, 153, 156, 169. And she received chiropractic care on multiple occasions in 2019 and 2020 for lower back pain, which she attributed to lifting. Ex. 5.

- On September 29, 2020, Petitioner (age 56 years) received the flu vaccine intramuscularly in her right deltoid at a CVS pharmacy. Ex. 1. Petitioner also received the Shingles vaccine on the same day, in her opposing left deltoid. Ex. 2 at 139.

- Two days post-vaccination, on October 1, 2020, Petitioner visited her primary care provider ("PCP"), complaining of pain in the upper portion of her right arm since receiving the flu shot. Ex. 2 at 139. Noting that her left

4

- arm (in which she received the Shingles vaccine) was "just sore, not painful," Petitioner described constant, and progressively worsening, pain, estimated at a level of ten out of ten, in her right arm. *Id.* Upon examination, she was assessed as having normal ROM with moderate pain (*id.* at 141). Opining that her condition was "[l]ikely secondary to receiving flu shot," the PCP instructed Petitioner to apply ice, referred her to an orthopedist, and prescribed a trial of Naproxen for her pain. *Id.* at 142.

- Six days later, on October 6, 2020, Petitioner was seen by an orthopedic surgeon, for upper right arm pain, described as "acute and . . . occurring in [a] persistent pattern for 1 week." Ex. 3 at 16. She described dull, aching, and sharp pain, aggravated by physical activity, with "intermittent episodes of pain as bad as 8 or 9 out of 10." *Id.*

- Upon examination, the orthopedic surgeon observed "[s]ome mild tenderness over the lateral aspect of the deltoid," but normal ROM. Ex. 3 at 17. Characterizing her arm function as excellent, and her pain as well controlled," he encouraged Petitioner "to go about her daily activities and follow up if things ha[d] not improved." *Id.* at 16.

- On October 19, 2020, Petitioner returned to the orthopedic surgeon for a follow-up appointment. Ex. 3 at 14. She reported that "her shoulder ha[d] not gotten better," that she had "symptoms with flexion and abduction," and had been unable to perform her usual exercise routines. *Id.* Again observing normal ROM, the orthopedic surgeon administered a steroid injection. *Id.* at 14-15.

- A month later, on November 6, 2020, Petitioner returned to the orthopedic surgeon, reporting that "she has 75% pain relief, but [her shoulder] still bothers her." Ex. 3 at 12. Normal ROM was again noted in the record from this visit. *Id.* at 13. Stating that "her symptoms are worse when she is carrying stress and tightness in her traps,"[4] Petitioner requested to begin PT (*id.* at 12), and the orthopedic surgeon made that referral (*id.* at 13).

---

[4] The trapezius is "a large muscle in your back, . . . commonly refer[red] to . . . as traps or trap muscles." https://my.clevelandclinic.org/health/body/21563-trapezius-muscle (last visited on May 14, 2025).

> Like the rest of [the] back muscles, your traps are skeletal (superficial) muscles and are part of your musculoskeletal system. The upper section connects to your skull and neck (cervical spine). The middle and lower sections attach to bones in your thoracic spine. They're also connected to the back (lateral) sides of your shoulder blade (scapula) and collarbone (clavicle).

*Id.*

5

- At her next orthopedic visit (five months later, on April 29, 2021), Petitioner reported that she had been doing exercises as part of a home exercise program, but "[h]as avoided formal [PT] due to concerns with covid." Ex. 3 at 10. She was described as having "good range of motion, full flexion and full abduction, but pain with abduction in internal/external rotation." *Id.* The orthopedic surgeon administered another steroid injection, this time guided by ultrasound imaging. *Id.* at 10-11.

- On May 27, 2021, Petitioner returned to the orthopedic surgeon for additional treatment. Ex. 3 at 8. Noting her "lack of progress with conservative treatment," the orthopedic surgeon ordered an MRI. *Id.*

- Performed on June 3, 2021, the MRI showed no evidence of a rotator cuff tear or significant glenohumeral osteoarthritis. Ex. 3 at 18. However, there was "[m]inimal fluid . . . seen within the right subacromial/subdeltoid bursa." *Id.*

- Six days later, on June 9, 2021, the orthopedic surgeon administered a third steroid injection to Petitioner's right shoulder and provided her with a PT referral. Ex. 3 at 6-7.

- At her first PT session on June 28, 2021, it was noted that Petitioner was being treated for ten months of right shoulder pain, developed after a flu shot in September 2020. Ex. 4 at 9-10. She reported that the three steroid injections she received "have helped reduce discomfort." *Id.* at 10. Although her ROM was characterized as normal, the specific numeric degrees (noted for each type of movement) included 25 degrees of adduction. *Id.* at 10-11. It was noted that Petitioner "remain[ed] hesitant to use her R arm for fear of irritating it." *Id.* at 9.

- Petitioner attended three more PT sessions in July 2021. Ex. 4 at 10-21. At her second session on July 13, 2021, the therapist noted mild internal rotation loss. *Id.* at 14.

- At her last PT session on July 22, 2020, the therapist stated that Petitioner had "completed a month in PT to restore full mobility and strength." *Id.* at 19. Her end range was characterized as "now better." *Id.* Petitioner was instructed to continue with home exercises. *Id.*

6

I have previously determined that a petitioner must be able to establish some limitation in ROM as part of his SIRVA Table claim showing. *Bolick,* 2023 WL 8187307, at *6. This requirement is not fulfilled by establishing pain *with* motion, but rather a demonstrated *outright* reduction of ROM. *Petty v. Sec'y of Health & Hum. Servs.,* No. 19-1332V, 2024 WL 5381961, at *5 (Fed. Cl. Spec. Mstr. Sept. 24, 2024). However, even a slight reduction in ROM will suffice. *Stamm v. Sec'y of Health & Hum. Servs.,* No. 20-1590V, 2024 WL 4678224, at *5 (Fed. Cl. Spec. Mstr. Oct. 1, 2024). And the reduced ROM need not be shown to have *begun* within 48-hours of vaccination (as with pain), or even to have persisted for any specific, longer period. *McNally v. Sec'y of Health & Hum. Servs.,* No. 20-1763V, 2024 WL 4024429, at *4 (Fed. Cl. Spec. Mstr. July 31, 2024); *Silacci v. Sec'y of Health & Hum. Servs.,* No. 21-1265V, 2024 WL 5295093, at *6-7 (Fed. Cl. Spec. Mstr, Dec. 5, 2024).

When arguing that Petitioner had failed to meet this requirement, Respondent acknowledges a PT record notation from July 2021 that documents mild internal ROM loss. Rule 4(c) Report at 6. But he seems to discount the probative value of this evidence due, in part, to its timing – more than nine months post-vaccination. *Id.* As I determined in *Silacci*, however, ROM reduction can be established even when based upon findings observed more than one-year post-vaccination. 2024 WL 5295093, at *6-7.

And there is an additional entry in the record from Petitioner's first PT session in June 2023, showing her adduction ROM was measured at 25 degrees - one-half the maximum value of 50 degrees.[5] Although adduction is not often measured, due to the difficulty obtaining accurate and consistent values,[6] because the recorded value is 25 degrees lower than the usual maximum, it still provides some evidence of at least a slight ROM reduction. Additionally, both PT entries are buttressed by the therapist's later statement – that one purpose of the PT was to restore full mobility.

Furthermore, the observations of normal ROM made by the PCP and orthopedic surgeon who treated Petitioner's condition during the first eight months of her injury, do not undermine the later created PT record entries. Petitioner's treatment advanced in a linear fashion – with her seeing only one provider at a time. Thus, these earlier observations do not directly counter the therapist's later findings of mildly limited ROM.

---

[5] DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 26 (32th ed. 2012). This diagram illustrates abduction: the movement of a straight arm from the side to above the shoulder – shown with a maximum range of 180 degrees; and adduction: the straight arm's movement from the same starting position across the front of the body – shown with a maximum range of 50 degrees. *Id.*

[6] Cynthia C. Norkin and D. Joyce White, MEASUREMENT OF JOINT MOTION: A GUIDE TO GONIOMETRY, 84 (F.A. Davis Co., 5th ed. 2016) (showing the lack of a numeric range for this particular movement).

As is the case when assessing six-month sequela, the mildness and intermittent nature of the reduced ROM exhibited by Petitioner are highly relevant to damages, but do not prevent a favorable limited ROM finding. Nor does the late timing of observed reduction prevent Petitioner from satisfying this Table SIRVA requirement. Accordingly, there is preponderant evidence to establish Petitioner suffered at least a minimal reduction in ROM, approximately nine months post-vaccination.

### III.  Additional Requirements for Entitlement

#### A.  Legal Standards

In addition to requirements concerning the vaccination received, the duration of petitioner's injury, and the lack of other award or settlement,[7] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction

---

[7] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

8

studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

### B.   Analysis

Respondent has stated no further objections to compensation, and I find Petitioner has otherwise satisfied all other criteria for a Table SIRVA injury following receipt of the flu vaccine. There is no evidence of prior right shoulder pain, inflammation, or dysfunction or an alternative cause for Petitioner's symptoms. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv) (first and fourth QAI criteria). And Petitioner experienced pain within 48 hours of vaccination and exhibited pain and limitations in ROM solely in her right, injured shoulder. *E.g.,* Ex. 2 at 139; Ex. 3 at 16; Ex. 4 at 9-10; *see* 42 C.F.R. § 100.3(c)(10)(ii) & (iii) (second and third QAI criteria).

As I have determined in this ruling, the record supports a finding that Petitioner suffered mild reduction of her right shoulder ROM. *See supra* Section II.B. Additionally, the medical records show Petitioner suffered the residual effects of her injury for more than six-months. Ex. 3 at 10 (April 29, 2021 orthopedic visit); *see* Section 11(c)(1)(D)(i) (the Vaccine Act's six-month severity requirement). And the vaccine record shows Petitioner received the flu vaccine at a CVS pharmacy. Ex. 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). And there is no evidence that Petitioner has

collected a civil award for his injury. *See* Section 11(c)(1)(E) (lack of prior civil award). Thus, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## IV. Appropriate Amount of Compensation

Although I have found Petitioner entitled to compensation, I expect the amount to be awarded for her past pain and suffering to be on the lower end for a SIRVA. Despite reporting severe pain levels, Petitioner required only minimal treatment, exhibited the slightest reduction in ROM, and obtained at least temporary relief from the steroid injections she received. Furthermore, there is no evidence in the record as it currently stands that Petitioner required treatment beyond late July 2021, only ten-months post-vaccination. Thus, Petitioner should not expect a substantial pain and suffering compensation.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case.**

IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master