# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 23-0411V

| | |
|---|---|
| JO ANNE CUNNINGHAM,<br><br>           Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>           Respondent. | Chief Special Master Corcoran<br><br>Filed: March 25, 2026 |

*Leigh Finfer, Muller Brazil, LLP, Dresher, PA,* for Petitioner.

*Nina Ren, U.S. Department of Justice, Washington, DC,* for Respondent.

## DECISION AWARDING DAMAGES[1]

On March 24, 2023, Jo Anne Cunningham filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a right shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving an influenza ("flu") vaccine on September 29, 2020. Petition at 1, ¶ 1, 16. The matter was assigned to the "Special Processing Unit" (the "SPU"). ECF No. 8. I determined that Petitioner was entitled to compensation, but the parties were unable to resolve damages on their own,[3] so I ordered briefing on the matter.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Although the parties disputed whether Petitioner suffered any reduction in range of motion ("ROM"), I found that Petitioner suffered at least a minimal reduction in ROM, and she also satisfied the other

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount of **$48,000.00 for actual pain and suffering, plus $1,426.91 for satisfaction of the Medicaid lien in this case.**

## I.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my

---

requirements of a compensable Table SIRVA injury. Ruling on Entitlement, filed May 23, 2025, ECF No. 25. Less than three months later, the parties informed me that they had reached an impasse in their damages discussions and requested that I set a briefing schedule. Status Report, filed Aug. 8, 2025, ECF No. 29.

predecessor Chief Special Masters) adjudicating similar claims. *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). *Graves* maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

## II.    Prior SIRVA Compensation Within SPU[4]

### A.    Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2026, 5,397 SPU SIRVA cases have resolved since the inception of SPU more than ten years before. Compensation has been awarded in the vast majority of cases (5,194), with the remaining 203 cases dismissed.

2,946 of the compensated SPU SIRVA cases were the result of a ruling that the petitioner was entitled to compensation (as opposed to an informal settlement), and therefore reflect full compensation.[5] In only 351 of these cases, however, was the amount of damages determined by a special master in a reasoned decision or ruling.[6] As I have

---

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] The remaining 2,248 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

[6] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (2,561 cases) or stipulation (34 cases). Although all proposed amounts denote *some* form of

previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable guidance in deciding what similarly-situated claimants should also receive.[7]

The data for all categories of damages decisions described above reflect the expected differences in outcome, summarized as follows:

|  | Damages Decisions by Special Master | Proffered Damages | Stipulated Damages | Stipulated[8] Agreement |
|---|---|---|---|---|
| Total Cases | 352 | 2,560 | 34 | 2,248 |
| Lowest | $25,000.00 | $4,000.00 | $37,013.60 | $1,000.00 |
| 1st Quartile | $66,994.13 | $58,000.79 | $87,750.00 | $30,000.00 |
| Median | **$91,163.89** | **$77,500.00** | **$112,119.37** | **$47,951.60** |
| 3rd Quartile | $125,000.00 | $105,276.51 | $160,376.79 | $73,477.50 |
| Largest | $1,569,302.82 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B.    Pain and Suffering Awards in Reasoned Decisions

In the 352 SPU SIRVA cases in which damages were determined via reasoned decision or ruling, compensation for a petitioner's actual or past pain and suffering varied from $25,000.00 to $215,000.00, with $89,500.00 as the median amount. Only ten of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[9] In one of these cases, the future pain and suffering award was limited by the statutory pain and suffering cap.[10]

---

agreement reached by the parties, those presented by stipulation derive more from compromise than instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

[7] Of course, even though *all* independently-settled damages issues (whether by stipulation/settlement or proffer) must still be approved by a special master, such determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

[8] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[9] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

[10] *Joyce v. Sec'y of Health & Hum. Servs.*, No. 20-1882V, 2024 WL 1235409, at *2 (Fed. Cl. Spec. Mstr. Feb. 20, 2024) (applying the $250,000.00 statutory cap for actual and future pain and suffering set forth in Section 15(a)(4) before reducing the future award to net present value as required by Section 15(f)(4)(A));

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In nine cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

### III.    The Parties' Arguments

The parties agree that I should award $1,426.91 in satisfaction of a Medicaid lien in this case. Petitioner's Brief in Support of a Damages Decision ("Brief") at 1, 7, ECF No. 31; Respondent's Brief on Damages ("Opp.") at 2, 10, ECF No. 32. Thus, the only area of disagreement is the amount of compensation which should be awarded for Petitioner's past pain and suffering. Petitioner seeks $85,000.00, and Respondent argues for an award of $45,000.00. *Id*.

Emphasizing her initial complaint of severe pain (rated ten out of ten) for which she sought treatment only two days post-vaccination, Petitioner insists that she gained

---

*see Youngblood v. Sec'y of Health & Hum. Servs*., 32 F.3d 552, 554-55 (Fed. Cir.1994) (requiring the application of the statutory cap before any projected pain and suffering award is reduced to net present value).

5

significant relief only after her third steroid injection (administered approximately eight months post-vaccination), and subsequent physical therapy ("PT") attended two months thereafter. Brief at 6. Additionally, she attributes a more than five-month treatment gap following the administration of her first steroid injection and PT referral (from early November 2020 to late April 2021) to concerns related to the worldwide COVID-19 Pandemic,[11] rather than any symptom improvement. *Id.*

Petitioner favorably compares the facts and circumstances in her case to those experienced by the petitioners in *Colucci* and *Bruegging*[12] - decisions featuring past pain and suffering awards of $80,000.00 and $90,000.00, respectively. Brief at 6-7. Acknowledging the *Colucci* petitioner attended a greater number of PT sessions, Ms. Cunningham insists her past pain and suffering award should be greater due to her quick initial complaint, longer injury duration, and greater number of steroid injections. *Id.* at 6. Petitioner maintains that her overall symptom duration was similar to that of the *Bruegging* petitioner, but her MRI findings were more significant, and she required multiple steroid injections. *Id.* at 7.

Citing language in my entitlement ruling regarding the mildness and intermittent nature of Petitioner's range of motion ("ROM") limitation, Respondent contends that Petitioner's award "should be on the lower end for a SIRVA." Opp. at 5. He also emphasizes the limited duration of Petitioner's SIRVA and the overall improvement she gained from only four months of *active* treatment. *Id.* at 5-6. Countering Petitioner's argument that fears related to the COVID pandemic prevented her from pursuing PT during the almost six-month gap in treatment following the first steroid injection she received, Respondent observes that Petitioner "sought care for other medical concerns" during this time. *Id.* at 6 (citing Ex. 2 at 125-27; Ex. 5 at 21-23).

Respondent also distinguishes the cases cited by Petitioner, contrasting the longer durations of moderate to severe pain and greater limitations in ROM experienced by those petitioners, as well as the more significant MRI findings for the *Bruegging* petitioner, and greater amount of PT in *Colucci.* Opp. at 7-8. Instead, for better comparable cases Respondent references *Goatee* and *Piccolotti*[13] - decisions involving past pain and suffering awards of $43,000.00 and $45,000.00, respectively. Opp. at 8-9.

---

[11] *See* https://www.cdc.gov/museum/timeline/covid19.html (last visited Mar. 23, 2026) (For a timeline related to the pandemic and availability of COVID vaccines).

[12] *Colucci v. Sec'y of Health & Hum. Servs.,* No. 19-1684V, 2022 WL 17849579 (Fed. Cl. Spec. Mstr. Nov. 14, 2022); *Bruegging v. Sec'y of Health & Hum. Servs.,* No. 17-0261V, 2019 WL 2620957 (Fed. Cl. Spec. Mstr. May 13, 2019).

[13] *Goatee v. Sec'y of Health & Hum. Servs.,* No. 22-0827V, 2024 WL 5295109 (Fed. Cl. Spec. Mstr. Dec. 2, 2024); *Piccolotti v. Sec'y of Health & Hum. Servs.,* No. 20-0135V, 2023 WL 3165383 (Fed. Cl. Spec. Mstr. May 1, 2023).

### IV.    Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the filed medical records, affidavits, and sworn declarations and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A thorough review of the medical records reveals that Ms. Cunningham (age 56) suffered a mild SIRVA involving severe pain levels for less than one-month post-vaccination, little to no limitations in ROM, and significant relief following her first steroid injection administered on October 19, 2020. Ex. 2 at 139-43; Ex. 3 at 12-17. Although she required additional treatment from late April through July 2021 - consisting of two more steroid injections, an MRI revealing only minimal subacromial/subdeltoid bursal fluid, and 3 PT sessions, Petitioner reported only mild symptoms during this time. Ex. 3 at 5-11, 18; Ex. 4 at 10-21.

Additionally, Petitioner's almost six-month gap in treatment (from early November 2020 through April 2021) appears to have been due to the symptom relief she gained from her first steroid injection, rather than to fears related to the COVID Pandemic, as she contends.[14] During this time, Petitioner visited the chiropractor twice for treatment of back pain and left rhomboid spasms. Ex. 5 at 22-23. And in 2020 (when the risk of contracting COVID was greater and the COVID vaccine was not yet available), Petitioner attended twelve chiropractic appointments (Ex. 5 at 10-21), and visited her primary care provider for routine care of her chronic conditions such as hyperlipidemia and perimenopausal symptoms (Ex. 2 at 144-51).

The cases cited by Petitioner are not helpful comparisons due to the much longer acute phases of significant pain - approximately six months for the *Colucci* petitioner and eight months for the *Bruegging* petitioner. *Colucci*, 2022 WL 17849579, at *1-2, 4-5; *Bruegging*, 2019 WL 2620957, at *1-3, 9-10. Additionally, the *Ross, Berberich,* and *Russo* cases - featuring awards ranging from $59,000.00 to $63,000.00, and involving initial

---

[14] When she returned to the orthopedist for treatment in late April 2021, Petitioner reported that she had not attended PT as prescribed due to concerns related to COVID. Ex. 5 at 10.

acute phases of severe pain more than twice the duration suffered by Petitioner (from two to three months) – support the conclusion that Petitioner's award should be lower.[15]

The *Goatee* case cited by Respondent is similarly deficient, albeit in the opposite extreme – showing a lack of *any* acute initial phase of more intense shoulder pain. *Goatee*, 2024 WL 5295109, at *1-2, 5. However, the facts and circumstances experienced by the *Piccolotti* petitioner were similar to those in this case. Although the severity of the *Piccolotti* petitioner's pain is not clearly stated, he sought treatment only ten days post-vaccination – signifying more severe initial symptoms. *Piccolotti*, 2023 WL 3165383, at *5. And his overall duration was close to that experienced by Petitioner, albeit with slightly less treatment – only two steroid injections and no PT. *Id.*

I also find the *Mejias*[16] case - featuring the same pain and suffering amount of $45,000.00 - offers a good comparison. The *Mejias* petitioner sought treatment within two days of vaccination and suffered a SIRVA with similar overall duration, albeit a longer (yet slightly less intense) acute phase of three months. *Mejias*, 2021 WL 5895622, at 6-7. Still, because the *Mejias* petitioner required only oral medication and lidocaine patches (*id.*), I will award slightly more for Petitioner's past pain and suffering - $48,000.00.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $48,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[17] Additionally, I will award the agreed upon Medicaid lien amount, $1,426.91.**

Based on the record as a whole and arguments of the parties, **I award $49,426.91 as follows:**

---

[15] *Ross v. Sec'y of Health & Hum. Servs.,* No. 20-1674V, 2023 WL 9424777 (Fed. Cl. Spec. Mstr. Dec. 18, 2023) (awarding $59,000.00 for past pain and suffering in a short-form decision following expedited Motions Day argument); *Berberich v. Sec'y of Health & Hum. Servs.,* No. 20-0010V, 2021 WL 4823551, at *7-8 (Fed. Cl. Spec. Mstr. Sept. 14, 2021) (awarding $60,000.00 for past pain and suffering); *Russo v. Sec'y of Health & Hum. Servs.,* No. 20-1491V, 2022 WL 4717927, at *1-2, 4 (Fed. Cl. Spec. Mstr. Aug. 31, 2022) (awarding $63,000.00 for past pain and suffering).

[16] *Mejias v. Sec'y of Health & Hum. Servs.,* No. 19-1994V, 2021 WL 5895622 (Fed. Cl. Spec. Mstr. Nov. 10, 2021); *Merwitz v. Sec'y of Health & Hum. Servs.,* No. 20-1141V, 2022 WL 17820768 (Fed. Cl. Spec. Mstr. Oct. 11, 2022).

[17] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

**A. A lump sum payment of $48,000.00, representing compensation for actual pain and suffering, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner; and**

**B. A lump sum of $1,426.91, representing compensation for satisfaction of the State of Maryland Medicaid lien, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to the appropriate agency.**

This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[18]

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[18] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.